## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JUSTIN SMITH,

       Plaintiff,

v.                            No. CIV 18-0739 RB/JFR

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
CHERYL A. VAN DUSEN, CHERYL SLOAN, and
JOHN DOE AGENTS and ADJUSTERS,

       Defendants.

### MEMORANDUM OPINION AND ORDER

Justin Smith was involved in an accident with a hit-and-run driver. Mr. Smith's mother had contracted with Liberty Mutual Fire Insurance Company (Liberty) for automobile insurance, and Mr. Smith was a Class I insured under that policy at the time of the accident. Mr. Smith submitted a claim for all benefits available to him under the policy. He alleges that Liberty and two of its agents, Cheryl VanDusen and Cheryl Sloan (the Individual Defendants), failed to promptly investigate the accident and frivolously refused to pay his claim brought under the uninsured motorist provisions of the policy.

Having considered the parties' summary judgment motions, the record, and the applicable law, the Court grants summary judgment in favor of and dismisses all claims against the Individual Defendants; grants summary judgment to Liberty and dismisses Count III (fraud); and grants summary judgment in part in favor of Mr. Smith against Liberty on Count I (breach of contract).

## I.   Statement of Facts

On July 20, 2013, in Albuquerque, New Mexico, a hit-and-run driver (Matthew Chalan) unlawfully ran a red light and struck Mr. Smith's vehicle. (*See* Doc. 2-29 (1st Am. Compl.) ¶¶ 14–

15 & n.1.) Mr. Smith's mother, Vicki Smith, had entered an automobile insurance policy with Liberty, which was valid and in effect on July 20, 2013. (*See id.* ¶¶ 8–9, 24; Doc. 115-A.) As a relative and resident of Vicki's household, Mr. Smith was a rated driver and a "Class I" insured under the policy. (Docs. 113-4 at 172:15–22; 115-A at 3.) The policy provided coverage for property damage, medical payments, and uninsured motorist claims involving Mr. Smith. (*See* 1st Am. Compl. ¶¶ 24–25; Docs. 115-A at 2; 122-15–16.)

Mr. Smith reported the accident to Liberty, and Liberty responded in writing. (*See* Doc. 113-1 at 52:16–53:1.) On July 24, 2013, Liberty employee Aaron Hansen emailed Vicki Smith to inform her that the "vehicle [was] repairable" and ask where she wanted it to be repaired. (Doc. 122-8.) Vicki called Liberty on August 5, 2013, to extend the term of the rental car and to check on the status of her vehicle, which was at the appraiser. (Doc. 122-9.) The appraiser informed Liberty that the vehicle was "less than $900 away from becoming a [total loss] . . . ." (*Id.*) Liberty employee Jillian Reed told Vicki about the amount of the appraisal but "did not mention that it was only $900 away" from becoming a total loss. (*Id.*) The appraiser's repair estimate total was $12,636.63, less a $500 deductible, for a total loss of $12,136.63. (*See* Doc. 133-13 at 2.) Mr. Smith later testified that the vehicle was totaled, never repaired, and he was never informed that Liberty intended to repair it. (Doc. 128-3 at 62:1–19.) On February 4, 2020, counsel for Liberty sent Mr. Bleus a letter to explain that Liberty "identified an overpayment associated with the applicable deductible" and issued a $250 check to Vicki Smith, as her deductible should have been $250, rather than $500. (*See* Docs. 133-11; 133-12.)

By August 28, 2013, the Claim File shows that Liberty was aware Mr. Smith claimed serious personal injuries as a result of the accident. (Docs. 122-10 at 132:6–21; 117-16.) In August and September 2013, Mr. Smith's medical providers sent medical records to Liberty. (*See* Doc.

122-10 at 144:14–19, 163:7–13.) Scott Vos, Liberty's Federal Rule of Civil Procedure 30(b)(6) witness, stated that he would have expected an injury adjuster to be assigned to Mr. Smith's case by at least August 28, 2013, but that did not happen. (*Id.* at 132:23–133:2, 163:7–13.) Mr. Vos testified that this omission was a mistake and not in conformity with Liberty's "policies, procedures, and guidelines for proper claim handling." (*Id.* at 133:3–11.)

On September 3, 2013, Mr. Smith, through his attorney, George Bleus, sent a letter to Liberty to request a copy of the insurance policy and to inform Liberty that Mr. Smith intended to claim all benefits available to him through the policy. (*See* Doc. 122-14; *see also* Doc. 122-10 at 134:23–135:13.) Liberty "should have" sent the policy but did not. (*See* Doc. 122-10 at 136:12–20; *see also* Doc. 122-25.) There is also evidence that Liberty was on notice, no later than September 19, 2013, "that the accident involved an uninsured vehicle." (*See* Docs. 122-10 at 150:19–151:8; 122-20.) Again, Mr. Vos stated that because Liberty had notice of Mr. Smith's potential uninsured motorist bodily injury (UMBI) claim, he would have expected Liberty to assign a "UMBI adjuster" to the claim. (Doc. 122-10 at 111:12–112:2, 120:17–19.) But rather than a UMBI adjuster, Mr. Vos explained that Liberty assigned a "no-fault adjuster" to handle the medical expense coverage. (*See id.* at 111:12–112:2, 130:23–131:1.) Presumably, Mr. Vos refers here to Ms. VanDusen, who testified that as a senior no-fault claim adjuster, her responsibilities included paying medical bills (known as "MedPay claims") that Liberty received. (Doc. 113-3 at 71:17–19, 73:10–12.) Ms. VanDusen asserts that her role in Mr. Smith's "claim was fairly minimal": she made sure the MedPay claims were paid. (*Id.* at 73:9–12.) She testified that "there was one entry [in Mr. Smith's file] with [her] name on it, . . . which ma[de her] role in this claim extremely minimal." (*Id.* at 169:9–12.)

On September 26, 2013, Liberty employee Janet Friday, "the claims representative

3

assigned to [the] First Party Medical claim[,]" gave Mr. Bleus instructions on how to submit medical bills. (Doc. 122-21.) Mr. Smith sought chiropractic care after the accident and last received medical treatment for his injuries on October 22, 2013. (*See* Doc. 128-3 at 33:11–15, 40:21–23.) He ended treatment because he had no health insurance, but he testified that he lost wages and continues to experience pain from his injuries. (*See id.* at 35:18–37:22, 40:10–23.)

On December 11, 2013, an employee of Mr. Bleus's firm called Liberty to request information. (*See* Docs. 122-22; 122-24 at 150:23–151:9.) Ms. Sloan testified that because there was no UMBI adjuster assigned, this request would have been routed to Ms. VanDusen, who would have been tasked with providing the information. (Doc. 122-24 at 151:10–152:2.) Instead, Ms. VanDusen sent an email to Mr. Bleus's firm identifying Ms. Sloan as the liability adjuster.[1] (Doc. 136-1.) Ms. Sloan, who was at that time a third-party liability claims adjuster, handled claims only for claimant property damage.[2] (*See* Doc. 113-2 at 46:8–9, 49:7–11, 75:23–76:4.) Here the claimant was Mr. Chalan, the hit-and-run driver. (*See id.* at 104:1–6.) In July 2013, Ms. Sloan determined "that the claimant was majority at fault and . . . closed the file." (Doc. 113-2 at 73:7–14; *see also* Doc. 122-6.) She testified that because Mr. Smith was not at fault, there was nothing else for her to handle. (Doc. 113-2 at 76:3–7.) Mr. Vos testified that Liberty should have, but did not, send a copy of the policy in response to the December 2013 phone call. (*See* Doc. 122-10 at 167:21–168:8.) There is evidence that Liberty sent "a Medical Payments Ledger to [Mr. Bleus] indicating that [Mr. Smith] had exhausted his Med Pay coverage." (*See* Doc. 117-23.)

---

[1] Mr. Smith argues that this identification of Ms. Sloan as a "liability adjuster" may have meant that she was a "first-party" adjuster—or someone who would have been "assigned to process the [UMBI] claim . . . ." (*See* Doc. 136 at 8.) Yet Ms. Sloan testified, and Mr. Vos affirmed, that she was a "third-party liability adjuster," not a first-party liability adjuster. (*See* Docs. 113-2 at 46:4–9, 73:4–14; 122-10 at 128:16–19.) Mr. Smith has come forward with no evidence to specifically controvert this fact, thus there is no genuine dispute of fact on this issue.

[2] A "claimant" is an individual who is not insured with Liberty. (See Doc. 113-2 at 46:17–47:1.)

4

In February and June 2014, Mr. Bleus sent demand letters to Liberty; the June letter was addressed to the attention of Ms. VanDusen. (Docs. 122-23; 122-25.) Liberty did not send a settlement offer in response to either letter.[3] (*See* Doc. 122-10 at 119:9–120:6.) Mr. Vos testified that he "didn't expect to see an offer because [Mr. Smith's claim] hadn't been assigned to a [UMBI] adjuster" prior to the demand letter. (*Id.* at 117:25–118:3.) Mr. Vos reiterated, though, that the claim "should have been assigned to a[ UMBI] adjuster . . . ." (*Id.* at 118:5–8.) It is unclear exactly *who* should have assigned the claim to a UMBI adjuster. Ms. Sloan testified that if Ms. VanDusen, while handling the MedPay claims, thought that the claim should be escalated to a UMBI adjuster, she "would expect that [Ms. VanDusen] would do that." (Doc. 122-24 at 124:22–125:7.) Ms. Sloan cautioned, though, that she did not know how that would have been handled, as she is unfamiliar with the operating policies of that department. (*Id.* at 125:7–13, 132:5–13.) For his part, Mr. Vos referred to Liberty's failure to assign a UMBI adjuster as a mistake made multiple times, because the decision to assign a UMBI adjuster "would have been triggered on a number of occasions." (Doc. 122-10 at 177:11–16.)

Ms. Sloan stated that when Liberty later received notice of Mr. Smith's lawsuit, she "opened the exposures required to handle that suit and assigned it to a litigation adjuster." (Doc. 113-2 at 75:13–20; *see also* Doc. 122-10 at 114:20–23.) This presumably occurred around August 3, 2017, when Mr. Smith filed his original complaint in state court. *See Smith v. VanDusen*, D-202-CV-2017-05651, Compl. (N.M. 2d Jud. Dist. Ct., Aug. 3, 2017). Mr. Vos testified that after Mr. Smith filed the lawsuit, Liberty assigned a UMBI adjuster and sent a copy of the policy to Mr.

---

[3] Mr. Smith asserts that Mr. Vos testified it was Ms. "Sloan's responsibility to respond to" the June 2014 letter, but she "failed to respond to" it. (Doc. 136 at 8–9 (citing Doc. 122-10 at 117:9-13; 118:1-8; 119:21-24; 120:1-6; 169:1-25) (emphasis omitted).) The Court cannot locate support for this assertion in the cited testimony, or in any of Mr. Vos's testimony.

Case 1:18-cv-00739-RB-JFR   Document 159   Filed 10/20/20   Page 6 of 27

Bleus. (*See* Doc. 122-10 at 115:22–25, 159:7–12.) He further stated that uninsured motorist "coverage should have been made available to [Mr. Smith] for this accident." (*Id.* at 171:16–17.)

On November 28, 2017, Liberty moved to dismiss the state lawsuit, arguing that because it had been more than four years since the accident, Mr. Smith's claims against Mr. Chalan (and, consequently, against Liberty) were barred by the three-year statute of limitations for personal injury. (*See* Doc. 117-2.) *See also Smith*, D-202-CV-2017-05651, Mot. To Dismiss (N.M. 2d Jud. Dist. Ct. Nov. 28, 2017). The state court denied the motion. *Id.*, Order Den. (June 6, 2018). Liberty removed the lawsuit to this Court on August 2, 2018. (*See* Doc. 1.)

Mr. Smith asserts 11 claims in his First Amended Complaint[4]: (I) breach of contract against Liberty[5]; (II) negligence against all defendants; (III) fraud and misrepresentation against all defendants; (IV) breach of the implied covenant of good faith and fair dealing against all defendants; (V) insurance bad faith in violation of the New Mexico Trade Practices and Frauds Act, N.M. Stat. Ann. §§ 59A-1-1–30 against all defendants; (VI) violation of the New Mexico Insurance Code Unfair Trade Practices Act (UTPA), N.M. Stat. Ann. §§ 57-12-1–26 against Liberty; (VII) intentional infliction of emotional distress, which he has voluntarily dismissed (Doc. 137); (VIII) negligent misrepresentation against all defendants; (IX) negligence *per se* against all defendants; (X) unreasonable delay against all defendants; and (XI) punitive damages against all defendants. (*See* 1st Am. Compl.) The parties have filed four dispositive motions, which the Court considers together in this Opinion. (Docs. 113; 115; 117; 122.)

---

[4] Mr. Smith brings Counts I– V and VII–XI against "John Doe Agents," "John Doe Adjusters," or both. (*See* 1st Am. Compl. at 1.) Because the parties have not addressed the claims against the John Doe defendants, the Court does not include them in the recitation of the claims here.

[5] Mr. Smith originally brought Count I against all defendants, but he has since dismissed this claim as to Ms. Sloan and Ms. VanDusen. (*See* Doc. 154.)

## II.    Legal Standards

### A.    Summary Judgment Standard of Review

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Halley v. Huckaby*, 902 F.3d 1136, 1143 (10th Cir. 2018) (quoting *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). The Court treats cross-motions for summary judgment no differently: it analyzes each motion on its own merits and "according to the well-worn standard for individual Rule 56 motions." *See AT&T Mobility Servs., LLC v. Vill. of Corrales*, 127 F. Supp. 3d 1169, 1172 (D.N.M. 2015).

"The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Tanner v. San Juan Cty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1106 (D.N.M. 2012) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)); (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). A party cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Id.* at 1107 (quotation and citations omitted). Instead, the non-moving party must come forward with "sufficient evidence on which the factfinder could reasonably find" in her favor. *Id.* (citations omitted). Evidence that is "merely colorable," *Anderson*, 477 U.S. at 249, or consists only of "[u]nsubstantiated allegations[,]" *McCoy*, 887 F.3d at 1044 (quotation omitted), is insufficient.

Pursuant to Local Rule 56, the party moving for summary judgment "must set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists."

D.N.M. LR-Civ. 56(b). The movant must number the facts "and must refer with particularity to those portions of the record upon which the movant relies." *Id.* In return, the non-moving party must also provide "a concise statement of the material facts . . . as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." *Id.* (emphasis omitted). "All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." *Id.*

Neither party strictly adhered to the Local Rules when filing the multiple briefs in this matter. To begin, the parties submitted their pretrial motions three days *after* the deadline set in the Scheduling Order (*see* Doc. 81 at 2) in contravention of Local Rule 56.1(a). Rule 56.1(a) provides that "motions for summary judgment *will not be considered* unless filed within the deadline set in the Rule 16 Scheduling Order." D.N.M. LR-Civ. 56.1(a) (emphasis added). The Court can find no record of either party seeking or being granted an extension. In the interest of moving this case toward a resolution, the Court will consider the motions, but it advises counsel for the parties to review and follow the Local Rules. The Court will address other errors and objections in its analysis of each motion.

## III. Motion for Summary Judgment as to the Individual Defendants on Plaintiff's Counts II, IV, V, VIII, IX, and X (Doc. 113)[6]

### A. Evidentiary Objections and Rulings

Mr. Smith objects several times on the basis that many of Defendants' "undisputed material facts" are legal conclusions. (*See* Doc. 136 at 7–11.) To the extent that is true, the Court has framed the facts accordingly. The Court will address all legal issues in its analysis.

---

[6] In accordance with summary judgment standards, the Court construes all facts in a light most favorable to Mr. Smith in considering Defendants' motions. (Docs. 113; 115.)

Mr. Smith, however, fails to follow this District's Local Rules in drafting his response brief. Rather than "refer[ring] with particularity to [the] portions of the record upon which [he] relies[,]" D.N.M. LR-Civ. 56.1(b), he relies in part on and "incorporates by reference" the statement of facts in his second motion for summary judgment. (*See* Doc. 136 ¶¶ 7–10, 12–18.) Most of these paragraphs do not specifically reference any of the 72 paragraphs of facts in his second motion, and the Court declines to search for the facts he intends to incorporate. (*See id.* ¶¶ 7, 10, 12–13, 16–18.) Thus, where he does not cite to a specific paragraph, the Court will not consider the entirety of the factual background section from a separate brief in determining whether a genuine issue of fact exists.

### B.   Mr. Smith fails to establish claims for negligence, negligent misrepresentation, and negligence per se against Ms. Sloan or Ms. VanDusen.

#### 1.   Count II (Negligence)

In New Mexico, "a negligence claim requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Herrera v. Quality Pontiac*, 73 P.3d 181, 185–86 (N.M. 2003). Critical to a negligence claim are "the concepts of foreseeability of harm to the person injured and of a duty of care toward that person." *Id.* (quotation and citation omitted). While negligence is generally a question of fact, the determination of "[w]hether a duty exists is a question of law for the courts to decide." *Id.* (quoting *Schear v. Bd. of Cty. Comm'rs of Bernalillo Cty.*, 687 P.2d 728, 729 (N.M. 1984)) (subsequent citations omitted). "Once courts recognize that a duty exists, that duty triggers 'a legal obligation to conform to a certain standard of conduct to reduce the risk of harm to an individual or class of persons.'"

*Grasshopper Nat. Med., LLC v. Hartford Cas. Ins. Co.*, No. CIV 15-0338 JB/CEG, 2016 WL 4009834, at *23 (D.N.M. July 7, 2016) (quoting *Baxter v. Noce*, 752 P.2d 240, 243 (N.M. 1988)).

While Defendants include Count II (negligence) in the claims at issue in their motion (*see* Doc. 113 at 1), they do not set it apart as an individual section of their brief like they did with the other counts. Instead, within their section discussing negligent misrepresentation and negligence per se, Defendants state: "Finally, while not plead [sic] as a separate count, it appears that [Mr. Smith] also seeks to assert a claim of negligence as to the actions of the Individual Defendants." (*Id.* at 16.) Defendants then discuss the requirements to maintain a claim for negligence and argue that neither Ms. Sloan nor Ms. VanDusen, as employees of Liberty, owed an individual duty to Mr. Smith that would make them liable for a negligence claim. (*See id.* at 16–17.)

Mr. Smith fails to respond to the Individual Defendants' argument regarding whether they owed him an individual duty of care, nor did he include any evidence or argument regarding negligence in his response brief. (*See* Doc. 136.) Accordingly, the Court finds that he has waived this claim. Even if he had addressed it, the Court has found no authority to conclusively establish that New Mexico courts recognize negligence claims against individual adjusters. *See*, *e.g.*, *Trinity Baptist Church v. Bhd. Mut. Ins. Servs., LLC*, 341 P.3d 75, 86 (Okla. 2014) (finding that "from a policy standpoint it makes little sense to hold that the adjuster has an independent duty when the insurer itself is subject to liability for the adjuster's mishandling of claims in actions alleging breach of contract and bad faith"); *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 586 S.E.2d 586, 589 (S.C. 2003) (following the "majority rule" and finding that insured cannot bring claim of negligence against independent insurance adjuster or adjusting company, because neither owes a general duty of care to insured) (gathering cases). The Court will grant the motion and dismiss the negligence claim against Ms. Sloan and Ms. VanDusen.

### 2.     Count VIII (Negligent Misrepresentation)

To establish a claim of negligent misrepresentation in New Mexico, a plaintiff must establish: "(1) the defendant made a material representation to plaintiff, (2) the plaintiff relied upon the representation, (3) the defendant knew the representation was false or made it recklessly, and (4) the defendant intended to induce reliance by the plaintiff." *Robey v. Parnell*, 392 P.3d 642, 652 (N.M. Ct. App. 2017) (citing *Saylor v. Valles*, 63 P.3d 1152, 1158 (N.M. Ct. App. 2003)).

Defendants argue that Mr. Smith has no evidence to show that either Ms. Sloan or Ms. VanDusen "made material representations to [him] that were either false or made with an expectation that Mr. Smith would rely upon such statements to his detriment." (Doc. 113 at 14–15.) Mr. Smith acknowledges that neither Ms. Sloan nor Ms. VanDusen personally spoke to him but asserts that "Defendants rely on a narrow application of the word 'misrepresentation.'" (Doc. 136 at 22.) He argues that they are liable for negligent misrepresentation because they:

> (1) failed to communicate coverage or deliver a verified/certified policy of insurance to the insured or his counsel prior to lawsuit having been filed, and despite repeated requests; (2) failed to open a UM[BI] exposure; (3) failed to assign a UM[BI] adjuster to investigate, evaluate, or process Plaintiff's bodily injury claim; (4) failed to effectuate prompt, fair and equitable settlement of a UM[BI] claim where liability had become reasonably clear, following Plaintiff's February 28, 2014[] demand for settlement; (5) failed to effectuate prompt, fair and equitable settlement of a UM[BI] claim upon Plaintiff's subsequent June 2, 2014[] 72 hour time-sensitive demand for settlement; and (6) failed in the performance of the contract by grossly overcharging a deductible (double what the insurer was lawfully entitled), and unlawfully withholding and benefitting from the overcharged funds for more than six and a half (6.5) years.

(*Id.* at 22–23 (emphasis omitted).)

The Court agrees that it may be possible to maintain a claim for negligent misrepresentation "aris[ing] from a failure to disclose . . . information." *See* UJI 13-1632 NMRA comm. cmt. Mr. Smith fails, however, to argue or provide evidence to establish that either Ms. Sloan or Ms.

VanDusen failed to act or communicate with any *intent* to induce his reliance. (*See* Doc. 136.) Consequently, the Court will grant the motion and dismiss Mr. Smith's claim for negligent misrepresentation against the Individual Defendants.

### 3.    Count IX (Negligence Per Se)

Mr. Smith bases his negligence per se claim on N.M. Stat. Ann. § 59A-16-20, which is known as the Unfair Insurance Practices Act (UIPA). (*See* Doc. 136 at 23.) The UIPA prohibits "any practice which . . . is defined or prohibited as, or determined to be, an unfair method of competition, or unfair or deceptive act or practice, or fraudulent." N.M. Stat. Ann. § 59A-16-3. New Mexico courts apply a four-part test to determine whether a plaintiff has established a negligence per se claim:

> (1) [T]here must be a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly, (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the legislature through the statute sought to prevent.

*Heath v. La Mariana Apartments*, 180 P.3d 664, 666 (N.M. 2008) (quoting *Archibeque v. Homrich*, 543 P.2d 820, 825 (N.M. 1975)).

The Individual Defendants assert that the evidence clearly shows they "handled Mr. Smith's claim for benefits in accordance with industry standards and Liberty Mutual's own claims handling guidelines." (Doc. 113 at 15.) They argue that Mr. Smith has demonstrated no facts to suggest they violated any standard of conduct in § 59A-16-20. (*Id.*) Mr. Smith's response is lacking. Though § 59A-16-20 contains 15 prohibited practices, Mr. Smith fails to specify which of the practices he believes the adjusters violated. (Doc. 136 at 23–24.) Even if he had addressed each one, the Court agrees with Defendants that Mr. Smith has not mustered enough evidence to show that they failed "to perform in conformance with the statute." (*See id.* at 24.) Rather than

wade through all 15 subsections, the Court will address those Mr. Smith believes Liberty violated. (*See* Doc. 122 at 30–31 (referencing N.M. Stat. Ann. § 59A-16-20(A)–(D), (G)-(H), (N)).)

Subsection (A) prohibits misrepresentation of "pertinent facts or policy provisions relating to coverages at issue." N.M. Stat. Ann. § 59A-16-20(A). Mr. Smith has offered no evidence to show that Ms. Sloan or Ms. VanDusen made any such misrepresentations. Subsection (B) prohibits a "fail[ure] to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies." *Id.* § 59A-16-20(B). Mr. Smith has not come forward with evidence to show that either adjuster failed to promptly act in response to his communications or were responsible for assigning his claim to a UMBI adjuster.  Subsection (C) relates to the adoption and implementation of standards for investigation. *Id.* § 59A-16-20(C). Mr. Smith has not shown that the Individual Defendants were responsible for adopting or implementing standards at Liberty. Subsection (D) prohibits "failing to affirm or deny coverage of claims of insureds within a reasonable time . . . ." *Id.* § 59A-16-20(D). Mr. Smith fails to demonstrate that either Ms. Sloan or Ms. VanDusen was charged with processing the UMBI claim.

Subsections (G) and (H), which prohibit unfair practices related to making an offer for or settling claims, are inapplicable, as Mr. Smith offers no facts to show that the Individual Defendants were responsible for resolving his UMBI claim. *Id.* § 59A-16-20(G)–(H). Finally, he has not shown that either adjuster "fail[ed] to promptly provide . . . a reasonable explanation . . . for denial of a claim" as prohibited by subsection (N). *Id.* § 59A-16-20(N). In summary, Mr. Smith does not provide facts to support a negligence per se claim based on N.M. Stat. Ann. § 59A-16-20(A)–(D), (G)–(H), or (N), and the Court will grant the motion on this issue.

**C.    Mr. Smith fails to establish a claim for breach of the implied covenant of good faith and fair dealing against Ms. Sloan or Ms. VanDusen.**

In Count IV, Mr. Smith asserts that the Individual Defendants have breached the implied covenant of good faith and fair dealing by:

> (*i*) failing to treat the insured's interests equal to their own; (*ii*) failing to promptly investigate and promptly evaluate the insured's claim; (*iii*) failing to reasonably settle the claim of the insured (when liability had become reasonably clear); and (*iv*) failing to deal fairly and honestly with the insured.

(Doc. 136 at 17; *see also* 1st Am. Compl. ¶ 105.) He argues that Ms. Sloan and Ms. VanDusen violated Liberty's policies and "act[ed] outside the scope of their authority." (Doc. 136 at 18.) Defendants assert that Mr. Smith "relies upon no testimony, affidavit or other evidence in the record to support application of these statements to the individual defendants." (Doc. 146 at 3.) The Court agrees. Mr. Smith fails to show evidence that creates a factual issue regarding whether Ms. Sloan or Ms. VanDusen were responsible for investigating his UMBI claim, assigning it to an adjuster, or processing it. Nor does he show that either adjuster failed to deal with him fairly or honestly. The Court will grant the motion with respect to Count IV.

**D.    Mr. Smith fails to establish a claim for insurance bad faith in violation of the UIPA against Ms. Sloan or Ms. VanDusen.**

Mr. Smith clarifies that he bases Count V, a claim for insurance bad faith, on § 59A-16-20. (*See* Doc. 136 at 20–21.) As with his negligence per se claim, however, the Court finds that Mr. Smith has not come forward with facts sufficient to withstand summary judgment based on an alleged violation of § 59A-16-20. Thus, the Court will grant the motion with respect to Count V.

**E.    Mr. Smith fails to establish a claim for unreasonable delay.**

Finally, Mr. Smith claims that the Individual Defendants are liable for an unreasonable delay in paying his claims, "because they failed or refused to do that which they were obligated to

do . . . ." (Doc. 136 at 20.) Again, Mr. Smith points to no evidence to show that either adjuster was obligated to investigate, assign, process, or pay out on his UMBI claim. The Court will grant the motion with respect to Count X.

### F.      Conclusion

Examining the evidence in a light most favorable to Mr. Smith, the Court finds that Defendants have shown an absence of evidence to support claims against Ms. Sloan or Ms. VanDusen for negligence (Count II), breach of the covenant of good faith and fair dealing (Count IV), insurance bad faith (Count V), negligent misrepresentation (Count VIII), negligence per se (Count IX), and unreasonable delay (Count X). And although not raised in the motion, the Court finds "it is 'patently obvious' that [Mr. Smith] could not prevail on" his claim for punitive damages (Count XI) against the Individual Defendants. *See McKinney v. State of Okla., Dep't of Human Servs., Shawnee, Okla.*, 925 F.2d 363, 365 (10th Cir. 1991) (quotation omitted). Because Mr. Smith fails to provide evidence to show there is a genuine issue for trial on these claims, the Court grants the motion.

## IV.      Defendants' Motion for Summary Judgment as to Count III (Doc. 115)

### A.      Evidentiary Objections and Rulings

Mr. Smith asserts that he "has ample evidence that Defendants knew of the falsity of the representations made to the insureds[,]" and he "intends to present Agent Ellen Marshall [at trial] to testify to her representations made to the insureds in selling the . . . automobile insurance policy . . . ." (Doc. 133 at 9 (emphasis omitted).) Mr. Smith cannot create a factual dispute on his fraud claim by referring to testimony that is not before the Court.

### B.      Mr. Smith fails to establish a claim for fraud.

In Count III, Mr. Smith brings a claim for fraudulent misrepresentation against Liberty and

its adjusters and claim representatives. (*See* 1st Am. Compl. ¶¶ 93–100; Doc. 133 at 15.)

> To prove fraudulent misrepresentation, a plaintiff must demonstrate by clear and convincing evidence that (1) a representation of fact was made (either by commission or by omission) that was not true, (2) the defendant made the representation knowingly or recklessly, (3) the representation was made with the intent to induce the plaintiff to rely upon it, and (4) that the plaintiff relied on the representation.

*Encinias v. Whitener Law Firm, P.A.*, 310 P.3d 611, 620 (N.M. 2013) (citing UJI 13-1633, NMRA;

*In re Stein*, 177 P.3d 513, 522 (N.M. 2008) (misrepresentation may be committed by omission)).

Mr. Smith premises his claim on two theories. First, he asserts that Defendants are liable for

fraudulent misrepresentation because they overcharged for the property damage deductible. (Doc.

133 at 16.) Second, he argues that Liberty is liable because it moved to dismiss the state court

lawsuit. (*Id.* at 17.) His claim fails under both theories.

Regarding the deductible, Mr. Smith asserts that Liberty falsely assured its "insureds that

it would only charge the property deductible amount to which the parties . . . stipulated to in the

insurance contract." (*Id.* at 16.) He argues that because Liberty overcharged on the deductible,

there is sufficient evidence for a "jury to decide whether Liberty . . . made that representation

recklessly or knowingly." (*Id.*) He acknowledges that there is no direct evidence that Liberty

intended for him to rely on its misrepresentation, but argues that "a reasonable jury can certainly

make the factual determination concerning intent" considering "the totality of the circumstances."

(*Id.*) He does not specifically address the fourth element but asserts that "Liberty Mutual and its

agents made [the fraudulent mis]representation . . . to induce the insured to agree to pay insurance

premium[s] as part of a yearly insurance contract." (*See id.* at 17.)

It is this fourth element that sinks Mr. Smith's claim. Mr. Smith must show that *he* relied

on the alleged misrepresentations. Yet he was not a party to the contract—he did not act in reliance

on any representation. *See Saylor*, 63 P.3d at 438 (affirming dismissal of fraudulent misrepresentation claim where plaintiff failed to show detrimental reliance on misrepresentation). His mother relied on Liberty's representations when she entered the insurance contract. Mr. Smith argues that Liberty owed him a fiduciary duty as a Class I insured under the contract. (*See* Doc. 133 at 7–8.) Yet he cites no authority to establish that his status as a Class I insured under *his mother's* insurance policy demonstrates *his* detrimental reliance. This claim fails.

His claim based on Liberty's motion to dismiss shares a similar fate. Mr. Smith asserts that in moving to dismiss his state court complaint, Liberty "deliberately misrepresented" facts to the state court "that it knew to be untrue." (Doc. 133 at 18.) He does not show, however, that Liberty made a misrepresentation to *him* in moving to dismiss the state court lawsuit, nor that he relied on any misrepresentation. Accordingly, this claim also fails. The Court grants summary judgment to Defendants on Count III.

## V.      Mr. Smith's Motion for Summary Judgment as to Counts IV and XI (Doc. 117)[7]

### A.      Evidentiary Objections and Rulings

In its response, Liberty vaguely objects to 13 of Mr. Smith's exhibits as "inadmissible cites": the expert report (Doc. 117-18); the February 2014 (Doc. 117-22) and June 2014 (Doc. 117-23) demand letters; the Claim File notes (Docs. 117-8–9, 117-12, 117-14–16, 117-19–21); and the September 2013 letter of representation (Doc. 117-17). (Doc. 128 at 4.) It argues that all facts grounded in these exhibits should be rejected because they rely on inadmissible evidence. (*Id.* (citing Doc. 117 ¶¶ 1–7, 9–10, 12–13, 17–20, 27–31, 33–35, 39, 41).) Liberty offers no specific reasons for its objection beyond its contention that the evidence is "inadmissible." (*Id.*)

---

[7] In accordance with summary judgment standards, the Court construes all facts in a light most favorable to Liberty in considering Mr. Smith's motions. (Docs. 117; 122.)

The Court finds that Mr. Smith's exhibits are largely admissible over Liberty's objections. First, as the Court has not relied on the expert report in deciding the parties' motions, any objection is moot. Second, Mr. Smith asserts that Liberty disclosed the Claim File notes in response to a Request for Production of Documents; thus they are admissible as records maintained in the regular course of business. (Doc. 145 at 4 (citing Fed. R. Evid. 803(6)).) Mr. Smith's February 2014 and June 2014 demand letters and the September 2013 letter of representation are part of the same Claim File and are similarly admissible. Without more specific argument from Liberty, the Court overrules its objections to these exhibits.

The Court pauses here to express its frustration with the parties' strategy in filing four motions for summary judgment. In all, the Court has examined 12 briefs totaling 219 pages, accompanied by 276 pages of exhibits. Many of the exhibits are duplicative, in violation of Local Rules. *See* D.N.M. L.R.-Civ. 10.7. (*Compare*, *e.g.*, Doc. 113-4, *with* Doc. 115-2; Doc. 117-1, *with* 122-1; 117-6–7, *with* 122-15–16; 117-8, *with* 122-6.) Mr. Smith even moves for summary judgment on Count IV in both of his motions. (*See* Docs. 117; 122.) Perhaps due to the flurry of briefs and duplicative exhibits, Liberty lodges objections to exhibits attached to Mr. Smith's first motion but fails to object to the same exhibits he attaches to other briefs. The parties could have easily consolidated their arguments into one dispositive motion each. The Court advises the parties to do so in the future to save the Court valuable time, and the litigants money.

    **B.**    **Mr. Smith's claim for breach of the implied covenant of good faith and fair dealing will be decided by a jury.**

New Mexico recognizes that insurance contracts incorporate "an implied covenant of good faith and fair dealing that the insurer will not injure its policyholder's right to receive the full benefits of the contract." *Salas v. Mountain States Mut. Cas. Co.*, 202 P.3d 801, 805 (N.M. 2009)

(quotation omitted). This "covenant requires that neither party do anything which will deprive the other of the benefits of the agreement." *Id.* (quotation omitted). In Count IV, Mr. Smith asserts that Liberty breached the covenant by: (1) failing to disclose that the hit-and-run driver was uninsured; (2) seeking to avoid paying his claim by moving to dismiss the state lawsuit; (3) failing to communicate coverage; (4) failing to open, process, and investigate a UMBI claim; and (5) failing to respond to his settlement demands. (Doc. 117 at 20–24; 1st Am. Compl. ¶¶ 101–07.) Liberty argues that it properly handled and made a good faith attempt to settle his claim. (Doc. 128 at 9–10.) It also argues, without citing legal authority, that any failure to produce the policy is not actionable because Mr. Smith is not the named insured. (*Id.* at 10.)

Liberty's 30(b)(6) witness, Mr. Vos, testified that Liberty received information on several that should have prompted it into action:

(1) September 3, 2013 – Mr. Bleus's letter of representation (Doc. 117-17): Mr. Vos testified that this letter put Liberty on notice that Mr. Smith was seeking UMBI benefits and stated that Liberty should have both assigned the claim to a UMBI adjuster and sent a copy of the policy as requested. (Doc. 117-13 at 134:23–136:24, 151:9–17, 163:14–22.)

(2) September 19, 2013 – Claim File note (Doc. 117-20): Mr. Vos stated that Liberty knew the vehicle involved in the accident was uninsured. (Doc. 117-13 at 150:14–151:8.)

(3) December 11, 2013 – Claim File note regarding telephone call from Mr. Bleus's office requesting policy (Doc. 122-22): Mr. Vos testified that he would have expected Liberty to have sent a copy of the policy and assigned a UMBI adjuster to Mr. Smith's claim in response. (Doc. 117-13 at 138:14–139:13, 140:21–141:20, 167:21–168:8.)

(4) February 28, 2014 – Mr. Bleus's first demand letter (Doc. 117-22): Mr. Vos testified Liberty should have assigned a UMBI adjuster in response to this letter, but it failed to either assign an adjuster or evaluate the claim. (Doc. 117-13 at 168:9–25.)

(5) June 2, 2014 – Mr. Bleus's second demand letter (Doc. 117-23): Although this letter indicates that Liberty has still not sent a copy of the policy to Mr. Smith, Mr. Vos confirmed that Liberty did not send a copy of the policy, evaluate the claim, or assign a UMBI adjuster in response to this letter. (Doc. 117-13 at 159:7–12, 169:1–20.)

Despite these multiple communications from Mr. Bleus, Liberty failed to provide a copy of the insurance policy, to assign the claim to a UMBI adjuster, to investigate the UMBI claim, or to reasonably resolve the claim.

The New Mexico Supreme Court has found that the implied covenant of good faith and fair dealing includes a duty to disclose the terms and conditions of an insurance policy. *See Salas*, 202 P.3d at 805 ("One important facet of the [covenant] is the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy.") (quotation omitted)); ("A number of courts have recognized that insurers . . . have a general duty to provide the named insured, payee, or other protected party with a copy of the policy or other adequate documentation of its terms.") (quoting Thomas M. Fleming, Annotation, INSURER'S DUTY, AND EFFECT OF ITS FAILURE, TO PROVIDE INSURED OR PAYEE WITH COPY OF POLICY OR OTHER ADEQUATE DOCUMENTATION OF ITS TERMS, 78 A.L.R. 4th 9, § 2(a) (1990)). New Mexico law also imposes on insurers "a duty to timely investigate and fairly evaluate the claim against its insured, and to accept reasonable settlement offers within policy limits." UJI 13-1704, NMRA; *see also Ambassador Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 690 P.2d 1022, 1024–26 (N.M. 1984).

The evidence here supports a finding that Liberty repeatedly failed to investigate or evaluate Mr. Smith's UMBI claim or to respond to his settlement demands or requests for the policy. However, a reasonable jury could find that Liberty's failure was a matter of mistake, rather than willfulness or bad faith. "[T]he implied covenant of good faith and fair dealing protects against only bad faith or wrongful and intentional conduct that injures the other party's rights under the contract, and breach of the implied covenant may be the basis for an award of punitive damages." *Azar v. Prudential Ins. Co. of Am.*, 68 P.3d 909, 927 (N.M. Ct. App. 2003) (citing *Paiz v. State Farm Fire & Cas. Co.*, 880 P.2d 300, 309–10 (N.M. 1994)). "[U]nder New Mexico law,

bad-faith conduct by an insurer typically involves a culpable mental state, and therefore the determination whether the bad faith evinced by a particular defendant warrants punitive damages is ordinarily a question for the jury to resolve." *Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 233–34 (N.M. 2004). Accordingly, the Court denies Mr. Smith's motion on this basis and leaves Count IV for the jury to determine.

### C.      Mr. Smith's claim for punitive damages is best left for the jury.

To make out a claim for punitive damages for insurance bad faith, a plaintiff must show that the insurer "acted with reckless disregard for the interest of the nonbreaching party." *Paiz v. State Farm Fire & Cas. Co.*, 880 P.2d 300, 307 (N.M. 1994) (citing *United Nuclear Corp. v. Allendale Mut. Ins. Co.*, 709 P.2d 649, 654 (N.M. 1985) ("To assess punitive damages for breach of an insurance policy there must be evidence of bad faith or malice in the insurer's refusal to pay the claim.")) (subsequent citations omitted). "Whether an insurer delayed paying an insured's claim in bad faith is typically a question for the jury." *Montoya v. Loya Ins. Co.*, No. CV 18-590 SCY/JFR, 2019 WL 5457081, at *9 (D.N.M. Oct. 24, 2019) (citing *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 586 (10th Cir. 1998)).

Mr. Smith argues that Liberty acted in bad faith when it misrepresented facts to the state court in its motion to dismiss. (Doc. 117 at 25; *see also* 1st Am. Compl. ¶¶ 160–62.) Liberty argued to the state court that Mr. Smith had no right to recover damages from Liberty because the expiration of the statute of limitations prevented him from bringing a claim against the hit-and-run driver. (*See* Doc. 117 at 25.) *See also Smith*, D-202-CV-2017-05651, Mot. to Dismiss. (N.M. 2d Jud. Dist. Ct., Nov. 28, 2017). Mr. Smith asserts that he could not have named Mr. Chalan in a lawsuit, because he did not know his identity. (Doc. 117 at 25.) Thus, he argues, Liberty's "proposition was clearly absurd, and its conduct was in utter disregard for the rights of its insured."

(*Id.* at 26.) Mr. Smith fails to develop this argument or cite authority to show that Liberty's position was unsupported or unreasonable. Thus, the Court cannot find bad faith on this basis and will deny his motion on Count XI.

## VI.    Mr. Smith's Motion for Summary Judgment as to Counts I, IV, V, and X (Doc. 122)

### A.    Evidentiary Objections and Rulings

In its response brief, Liberty groups Mr. Smith's facts into three categories, characterizing them as either "unsupported argument" based on "something tangible," "unsupported argument" without a basis in evidence, and facts that are no "more than argument." (See Doc. 129 at 3.) Glaringly absent from its response, however, are citations to the record to show an absence of support for Plaintiff's assertions, in violation of D.N.M. LR-Civ. 56.1(b). The Court deems facts (not arguments or legal conclusions) that refer with particularity to the record as undisputed unless they are specifically controverted.

### B.    Mr. Smith has established that Liberty breached the insurance contract.

To succeed on a claim for breach of contract in New Mexico, a plaintiff must show "the existence of a contract, breach of the contract, causation, and damages." *Abreu v. N.M. Children, Youth & Families Dep't*, 797 F. Supp. 2d 1199, 1247 (D.N.M. 2011) (citation omitted). Here, it is undisputed that Mr. Smith was covered under an insurance policy that provided uninsured motorists coverage and that he was hit by an uninsured driver. It is also undisputed that Liberty's failure to assign Mr. Smith's claim to a UMBI adjuster as early as August 2013 was not in conformity with its own policies and guidelines for proper claim handling.

Liberty argues that it did not breach the contract, because once it assigned the UMBI claim to an adjuster, it handled the claim effectively. (Doc. 129 at 13.) Again, Liberty did not send Mr. Smith a copy of the policy or assign his claim to a UMBI adjuster until after he filed a lawsuit

more than four years after the accident. No reasonable jury could find that Liberty's failure to act was in accordance with the contractual terms, particularly where Liberty's own 30(b)(6) witness testified that Liberty should have acted much earlier. Mr. Smith has marshaled facts to show breach.

Liberty also argues that it paid the full amount of Mr. Smith's MedPay claims and that he fails to show damages, as required to maintain a breach of contract claim.[8] (Doc. 129 at 13.) Liberty is mistaken. Mr. Smith testified that he has uncompensated damages in pain and suffering and lost wages. He need not prove the amount of those damages at this stage. *See Hemphill v. Liberty Mut. Ins. Co.*, No. CV 10-0861 LH/RHS, 2013 WL 12123306, at *1–5 (D.N.M. Mar. 27, 2013) (denying summary judgment to Liberty on plaintiff's breach of contract claim where Liberty had paid plaintiff the full amount due under policy's MedPay provisions but denied her claim under the uninsured/underinsured provisions, and finding that plaintiff would bear burden of proving damages at trial).

The Court finds that Liberty breached the insurance contract by failing to timely evaluate Mr. Smith's UMBI claim, and there is no evidence it has paid damages on the UMBI claim. Accordingly, the Court will grant summary judgment in favor of Mr. Smith as to Liberty on the breach of contract claim.

### C.    Mr. Smith's claim for unreasonable delay will be decided by a jury.

In Count X, Mr. Smith brings a claim for unreasonable delay in paying amounts owed under the uninsured motorist provisions of the insurance contract. (*See* 1st Am. Compl. ¶¶ 156–59.) This claim sounds in tort, rather than in contract. *See Chavez v. Chenoweth*, 553 P.2d 703,

---

[8] Liberty "dispute[s] . . . whether [it] sought 'averment of the performance of any condition precedent' in the contract . . . ." (Doc. 129 at 13 (quoting *McCasland v. Prather*, 585 P.2d 336, 335 (N.M. Ct. App. 1978)).) It does not elaborate on what condition precedent it refers to, and the Court finds it has waived any argument on this basis.

708–09 (N.M. Ct. App. 1976). "Such a tort claim provides a basis for recovery if there is evidence of bad faith. Bad faith means a frivolous or unfounded refusal to pay." *Id.* at 709 (citing *State Farm Gen. Ins. Co. v. Clifton*, 86 N.M. 757, 527 P.2d 798 (1974)).

> "Unfounded" in this context does not mean "erroneous" or "incorrect"; it means essentially the same thing as "reckless disregard," in which the insurer "*utterly* fail[s] to exercise care for the interests of the insured in denying or delaying payment on an insurance policy." It means an utter or total lack of foundation for an assertion of nonliability—an arbitrary or baseless refusal to pay, lacking any arguable support in the wording of the insurance policy or the circumstances surrounding the claim. It is synonymous with the word with which it is coupled: "frivolous."

*Jackson Nat. Life Ins. Co. v. Receconi*, 827 P.2d 118, 134 (N.M. 1992) (quoting *Jessen v. Nat'l Excess Ins. Co.*, 776 P.2d 1244, 1247 (N.M. 1989), *overruled on other grounds by Paiz*, 880 P.2d at 307). Mr. Smith argues that Liberty "refus[ed] coverage and/or delay[ed] payment on a lawful claim for reasons that are frivolous or unfounded," which was in "'reckless disregard' for the interest of the insured." (Doc. 122 at 29.) The record evidence unquestionably shows that Liberty failed to evaluate or respond to Mr. Smith's claim despite Mr. Bleus's multiple communications demanding coverage.

In *Trujillo v. State Farm Mutual Automobile Insurance Co.*, an insurer sought summary judgment on the plaintiff's unreasonable delay claim because there was "no evidence that it ever denied [the underinsured motorist] claim or that it acted with a 'culpable mental state' in deciding the claim." No. CV 18-638 KK/JHR, 2019 WL 6701326, at *5 (D.N.M. Dec. 9, 2019). The court found, however, that New Mexico "law makes clear that an insurer need not explicitly or definitively deny a claim to commit insurance bad faith; rather, it may also do so by delaying or withholding payment of the claim, provided it acts frivolously or without foundation." *Id.* (citing *Woodmen Acc. & Life Ins. Co. v. Bryant*, 784 F.2d 1052, 1056 (10th Cir. 1986); *Montoya*, 2019

WL 1116010 at *6; *Travelers Ins. Co. v. Montoya*, 566 P.2d 105, 106 (N.M. Ct. App. 1977)). The court held that the insurer was not "entitled to summary judgment merely because it did not expressly or conclusively deny [the p]laintiff's claim." *Id.*

Liberty's own 30(b)(6) witness stated that by September 2013, Liberty had notice of Mr. Smith's UMBI claim and failed to assign that claim to the correct adjuster. Mr. Vos testified, though, that Liberty's failure to respond to Mr. Bleus's three written communications was a "mistake" made multiple times. And while Liberty argues that that there is a factual issue regarding whether he was actually owed a payment for his UMBI claim (*see* Doc. 129 at 16), the real sticking point here is whether Liberty made an honest mistake in responding to Mr. Bleus's letters. A reasonable jury could find that Liberty's employees erroneously—but without bad faith—failed to respond to the communications.[9]

Of course, a reasonable jury could also find that Liberty's failure to investigate and resolve Mr. Smith's claim after three written communications represents culpable conduct. "[T]here comes a point at which the insurer's conduct progresses from mere unreasonableness to a culpable mental state." *Sloan*, 85 P.3d at 236; *see also Trujillo*, 2019 WL 6701326, at *5 (quoting *Am. Nat. Prop. & Cas. Co. v. Cleveland*, 293 P.3d 954, 958 (N.M. Ct. App. 2012)) (subsequent citation omitted); *Salopek Tr. for Salopek Family Heritage Tr. v. Zurich Am. Life Ins. Co.*, 446 F. Supp. 3d 886, 908 (D.N.M. 2020) ("An investigation may be untimely and unfair when there is 'an unreasonable delay in notification, timely evaluation and timely payment.'"). The Court denies the motion with respect to Count X.

---

[9] This is particularly true where Mr. Bleus made the tactical decision to file suit after four years had passed without calling Liberty to inquire about the status of the UMBI claim.

**D.      Mr. Smith has not established that Liberty is liable for a violation of the UIPA.**

In Count V, Mr. Smith asserts that Liberty violated several of its statutory obligations under the UIPA, N.M. Stat. Ann. § 59A-16-20. (1st Am. Compl. ¶¶ 108–22.) Oddly, Liberty looks only to the amended complaint in responding to the motion on Count V. (*See* Doc. 129 at 16–18.) It argues that Mr. Smith's complaint is not "well-pled" and "references broad swaths of the New Mexico Insurance Code . . . without specifying which portions Liberty allegedly violated or how it allegedly did so . . . ." (*Id.* at 17.) Yet in his motion, Mr. Smith argues that Liberty violated § 59A-16-20(A)–(D), (G)–(H), (N). (*See* Doc. 122 at 30–31.) Had he then taken time to specify which facts support violations of these subsections, he might have prevailed on this claim. He did not, however, tie the facts to his argument, and the Court declines to do so for him. As this is Mr. Smith's motion for summary judgment and he has failed to support his argument with citations to the record, the Court will deny the motion on this basis. Count V remains to be decided at trial.

**VII.    Conclusion**

Ms. Sloan and Ms. VanDusen have shown an absence of evidence to support any claims against them. The Court grants summary judgment to Ms. Sloan and Ms. VanDusen and dismisses them with prejudice from this lawsuit. Additionally, the Court grants summary judgment to Liberty with respect to Mr. Smith's claim for fraud and misrepresentation (Count III), and that claim is dismissed. Count VII (intentional infliction of emotional distress) was previously dismissed. (Doc. 137.)

Mr. Smith has established that he is entitled to summary judgment against Liberty on Count I (breach of contract). Mr. Smith must prove damages on this claim at a separate hearing.

The following counts remain at issue for trial against Liberty only: Count II (negligence); Count IV (breach of the implied covenant of good faith and fair dealing); Count V (insurance bad

faith violation of the UIPA); Count VI (violation of the UTPA); Count XIII (negligent misrepresentation); Count IX (negligence per se); Count X (unreasonable delay); and Count XI (punitive damages).

**THEREFORE,**

**IT IS ORDERED** that the Motion for Summary Judgment as to the Individual Defendants on Plaintiff's Counts I, II, IV, V, VIII, IX, and X (Doc. 113) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment on Plaintiff's Claim for Fraud (Doc. 115) is **GRANTED**;

**IT IS FURTHER ORDERED** that Mr. Smith's Motion for Partial Summary Judgment Regarding Defendant Liberty Mutual Fire Insurance Company's Breach of the Implied Covenant of Good Faith and Fear Dealing, Necessitating the Imposition of Punitive Damages (Doc. 117) is **DENIED**;

**IT IS FURTHER ORDERED** that Mr. Smith's Motion for Partial Summary Judgment and Supporting Memorandum of Law Regarding Liability of Defendant Liberty Mutual Fire Insurance Company (Doc. 122) is **GRANTED IN PART** with respect to Count I and **DENIED IN PART** with respect to the remaining claims; and

**IT IS FURTHER ORDERED** that Ms. Sloan and Ms. VanDusen are **DISMISSED** from this lawsuit with prejudice.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE